**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mona Lisa Lacy,<br><br>   Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>   Defendant. | No. CV-21-01908-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff Mona Lisa Lacy's appeal from the Social Security Commissioner's denial of disability insurance ("DI") benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Doc. 1). The appeal is fully briefed (Docs. 20; 23; 27). The Court now rules.

**I.   BACKGROUND**

Plaintiff filed an application for DI benefits in September of 2014, alleging a disability onset date of September 4. (Doc. 12-6 at 5). Plaintiff's application was denied at the initial stage, upon reconsideration, and by an administrative law judge ("ALJ") after a hearing. (Docs. 12-4 at 3, 14, 17, 32; 12-3 at 34). The Social Security Administration ("SSA") Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Doc. 12-3 at 2). Plaintiff appealed the Commissioner's final decision under 42 U.S.C. § 405(g). (*See* Doc. 12-14 at 7).

Her appeal came before Judge Stephen P. Logan of this Court, who initially ordered the matter remanded for an award of benefits. (*Id.* at 18). Upon reconsideration, however, Judge Logan amended his initial order to instead remand the matter for further development of the record. (*Id.* at 21, 24). On remand the ALJ again denied Plaintiff's claim, and the Appeals Council found no basis for changing the ALJ's decision. (Doc. 12-13 at 2–3). Plaintiff then timely filed this action seeking review of the Commissioner's final decision.

**a. The Disability Determination Process**

To be eligible for Social Security DI benefits, a claimant must, among other requirements, show that she is "under a disability" which existed while she was "insured for" such benefits. 42 U.S.C. § 423(a)(1). A "disability" is in an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). The SSA has created a five-step process for an ALJ to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(1). Each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At step one the claimant is not disabled if she is doing substantial gainful activity. *Id.* § 404.1520(a)(4)(i). At step two the claimant is not disabled if she does not have a "severe impairment," i.e., "any impairment or combination of impairments which significantly limits . . . physical or mental ability to do basic work activities." *Id.* § 404.1520(a)(4)(ii), (c). At step three the claimant is disabled (and entitled to benefits) if her impairment "meets the duration requirement" and "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *See id.* § 404.1520(a)(4)(iii).

If not, the ALJ will determine the claimant's "residual functional capacity" ("RFC") by considering "all the relevant evidence" including impairments, "any related symptoms," and resulting "physical and mental limitations" to determine "the most [the claimant] can still do despite [her] limitations." *Compare id.* § 404.1520(a)(4), *with id.* § 416.945(a)(1). At step four the claimant is not disabled if, considering the RFC and the physical and mental demands of the claimant's past relevant work, she can still perform such work. *Id.*

§ 404.1520(a)(4)(iv), (f). If the claimant cannot perform (or does not have) past work, at step five the claimant is not disabled if, considering her RFC, "age, education, and work experience," she can adjust to other work that exists "in significant numbers in the national economy." *Compare id.* § 404.1520(a)(4)(v), (g)(1), *with id.* § 404.1560(c). But if the ALJ finds the claimant cannot adjust to other work, she is disabled. *See id.* § 404.1520(a)(4)(v).

### b. The ALJ's Findings

The ALJ first found that Plaintiff was last insured for DI benefits on December 31, 2014. (Doc. 12-13 at 14). At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity between her disability-onset date and her last-insured date. (*Id.* at 15). At steps two and three the ALJ found that Plaintiff had a number of severe impairments, including migraines and fibromyalgia, but found that these impairments did not meet or medically equal the severity of a listed impairment. (*Id.* at 15–19). The ALJ then found that Plaintiff had the RFC to perform light work with some limitations. (*Id.* at 19). At step four the ALJ found that Plaintiff could not perform any past relevant work. (*Id.* at 40). At step five the ALJ found, based on the testimony of a vocational expert, that Plaintiff could adjust to other work that existed in significant numbers in the national economy. (*Id.* at 40–41). The ALJ concluded that Plaintiff was not disabled between her alleged onset date and her last-insured date. (*Id.* at 41).

## II. LEGAL STANDARD

This Court may not overturn the ALJ's denial of disability benefits absent legal error or a lack of substantial evidence. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). "Substantial evidence means . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). On review, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (citation omitted). The ALJ, not this Court, draws inferences, resolves conflicts in medical testimony, and determines credibility. *See Andrews v. Shalala*, 53 F.3d

1035, 1039 (9th Cir. 1995); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). Thus, the Court must affirm even when "the evidence admits of more than one rational interpretation." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). But by the same token the Court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [s]he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

**III.    ANALYSIS**

Plaintiff argues that the ALJ erroneously discredited Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms and also erroneously gave minimal weight to the opinion of Plaintiff's treating rheumatologist. Defendant argues that the ALJ gave legally sufficient reasons supported by substantial evidence for each determination. The Court will consider each issue in turn.

**a.    Subjective Symptom Testimony**

Plaintiff argues that the ALJ failed to adequately support her decision to discount Plaintiff's testimony regarding the severity of her symptoms. To discredit subjective symptom testimony an ALJ must first "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036–37 (9th Cir. 2007) (cleaned up). Once a Plaintiff satisfies this test, provided there is "no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (cleaned up).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms, and did not make a finding that she was malingering. (Doc. 12-13 at 23). But the ALJ concluded that Plaintiff's statements regarding the severity of her symptoms were "not entirely consistent" with medical and other evidence in the record and consequently found her less limited than she had alleged. (*Id.* at 23, 28, 39). Because the ALJ did not make a finding that Plaintiff was malingering,

the Court must determine whether the ALJ gave specific, clear, and convincing reasons for partly discrediting Plaintiff's symptom testimony.

An adverse credibility determination is sufficiently specific if the ALJ identifies "what testimony is not credible and what evidence undermines the claimant's complaints." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). In assessing credibility an ALJ may consider, among other factors, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Id.* at 1163 (citations omitted). Using "ordinary techniques of credibility evaluation" an ALJ may "discredit the claimant's allegations" so long as the ALJ "makes specific findings that are supported by the record." *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (cleaned up). Or, put more succinctly, the "specific, clear, and convincing" standard is satisfied where the "ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Plaintiff claimed that her ability to work was limited by muscle spasms, stiffness, and daily migraines, and also by constant pain which prevented sleep and interfered with household tasks. (Docs. 12-3 at 52; 12-7 at 15–17; 12-13 at 70, 75). She claimed that her pain or stiffness prevented her from sitting for more than 45 minutes, standing for more than 20 minutes, or lifting more than 10 pounds. (Doc. 12-3 at 62–63). She also testified that she spent most of each day lying down and suggested that she was only able to walk as far as her mailbox. (*See id.* at 63–7). The ALJ gave a number of specific, clear, and convincing reasons for discrediting Plaintiff's subjective symptom testimony.

### i. *Inconsistent Statements*

Two of the ALJ's reasons concerned Plaintiff's inconsistent statements. The ALJ first noted that Plaintiff's claim in a disability report that she had stopped working in 2009 "because of [her] condition" was inconsistent with her testimony that she did not have

significant symptoms until August of 2014 and with her admission that she had actually stopped working because she was laid off. (Doc. 12-13 at 24; *and see* Docs. 12-3 at 52, 57; 12-7 at 7). This is a specific finding supported by the record regarding a prior inconsistent statement, and is therefore a clear and convincing reason supporting the ALJ's credibility determination.

Plaintiff argues that this inconsistency cannot support the ALJ's disability determination because Plaintiff's attorney completed the disability report and might have misunderstood her response to the question. (Doc. 20 at 22). This argument essentially proposes a reasonable inference the ALJ could have drawn—but did not draw—from the evidence. From the fact that Plaintiff's attorney filled out the report, a reasonable person certainly could infer that the inaccurate statement resulted from the attorney misunderstanding Plaintiff's truthful answer. But a reasonable person could also infer that the inaccuracy resulted from the attorney correctly understanding Plaintiff's untruthful answer. Because both interpretations of the record are reasonable, the Court must defer to the ALJ's interpretation.

The ALJ next observed that Plaintiff's statements regarding the onset of her migraines were inconsistent with one another. (Doc. 12-13 at 25). This is a specific, clear, and convincing reason supporting her decision to discredit Plaintiff's symptom testimony. As the ALJ noted, on August 28, 2014, Plaintiff reported to a treatment provider that she had been having migraines for six months. (Doc. 12-8 at 43). However, earlier that same month on August 1st, Plaintiff had reported having a headache "1 hour ago, but not before hand." (*Id.* at 5). And on August 15th, Plaintiff had reported having a headache that had started four days prior, but "denie[d] history of health problems." (*Id.* at 31). The ALJ reasonably interpreted these reports as inconsistent: Plaintiff at times reported that her migraines had begun six months prior to August 2014, but at other times made statements which could reasonably be interpreted as indicating that she had not had migraines before that August.[1]

---

[1] Plaintiff argues that the ALJ's reasoning here is so unclear that the Court cannot possibly assess its legitimacy. (Doc. 24 at 23). The Court, to the contrary, had little trouble

- 6 -

### ii. *Failures to Seek or Follow Treatment*

The ALJ also considered several instances of Plaintiff's failure to seek or follow treatment. This is a proper basis for her adverse credibility determination: Ninth Circuit case law "is clear that if a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated." *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

The ALJ noted one instance in which Plaintiff failed to take prescribed medication. (Doc. 12-13 at 25). As the ALJ recounted, Plaintiff was admitted to the emergency room on August 15, 2014, for arm and leg pain, and was discharged with prescriptions for several medications, including Percocet for pain relief. (Doc. 12-8 at 29–30). When she was seen for a follow-up visit two weeks later, however, she reported that she had not taken any of the prescribed medications.[2] The ALJ reasoned that claimant's failure to take the prescribed medications suggested that her symptoms were not as severe as she had alleged. (Doc. 12-13 at 25). The Court finds that this unexplained failure to follow a prescribed course of treatment is a clear and convincing reason supporting the ALJ's credibility determination.

Plaintiff asserts that this unexplained failure is not relevant because it occurred before Plaintiff's alleged onset date of September 4. But Plaintiff neither explains her assertion nor supports it with citation to authority. (*See* Docs. 20 at 24; 27 at 7). Moreover, Plaintiff testified that the symptoms that caused her alleged disability began in August. (Doc. 12-3 at 57). That she failed to take prescribed medication for the same symptoms which would cause her alleged disability less than three weeks later is therefore relevant to whether her testimony regarding those symptoms is credible. Plaintiff also argues that she might have been hesitant to take the prescribed medication because Percocet is a narcotic

---

apprehending the ALJ's point and finds that it is clear enough to have the power to convince.

[2] (Doc. 12-8 at 43). Plaintiff reported during this follow-up that she had also been prescribed and failed to take ibuprofen during the August 14th emergency room visit. (*Id.*). From the record it appears that she was actually prescribed ibuprofen on August 1st. (*Compare id.* at 1, 8, *with id.* at 30). This only reinforces the ALJ's conclusion, as it implies that she had not taken prescribed pain medication during an entire month when she was allegedly experiencing pain.

- 7 -

and because she was "in the midst of investigating what was happening with her body." (Doc. 20 at 24). But Plaintiff also was prescribed and failed to take ibuprofen, which is not a narcotic. And in any case, this argument is merely an alternative interpretation of the record. Because the ALJ's contrary interpretation is reasonable, the Court defers to the ALJ.

The ALJ also discussed an unexplained failure to follow up as directed after a medical appointment. As the ALJ noted, during a September 30, 2014 visit at Barrow Epilepsy, Plaintiff was advised to follow up in one month. (Doc. 12-8 at 71). But the record does not show another Barrow visit until February of 2015. (*See id.* at 101). The ALJ reasoned that if Plaintiff's symptoms were as severe as she had alleged, she would have followed up within the recommended time. This unexplained failure to follow a prescribed course of treatment is a clear and convincing reason supporting the ALJ's determination.

An additional reason the ALJ gave for her credibility determination was Plaintiff's failure to contact her treating rheumatologist when her pain increased 10 days prior to a scheduled appointment. (Doc. 12-13 at 27). The ALJ reasoned that if Plaintiff's symptoms were as severe as she had alleged, she would not have waited for her next scheduled appointment to adjust her pain medication. (*Id.*). Plaintiff argues that this is an improper reason to discount Plaintiff's symptom testimony because it does not show that Plaintiff was not compliant with or seeking treatment. (Doc. 20 at 24–25). The Court agrees with Plaintiff. Although the ALJ's reasoning is clear enough, the Court finds that Plaintiff's conduct in this instance is not reasonably probative of credibility, and thus not a proper reason supporting the ALJ's credibility determination. *See Orn*, 495 F.3d at 638 (noting that failure to seek treatment "may be probative of credibility, because a person's normal reaction is to seek relief from pain," but that "where the stimulus to seek relief is less pronounced, . . . [this] approach to credibility makes little sense."). Considering the imminence of Plaintiff's scheduled appointment and her pre-existing access to prescription pain medication, her stimulus to seek relief appears attenuated and her reaction to that stimulus entirely normal.

Nonetheless, this error is harmless because the ALJ's many other reasons for discrediting Plaintiff's testimony are proper and supported by substantial evidence. *Cf. Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (2008) (stating that errors are harmless where they do not negate a credibility conclusion otherwise supported by substantial evidence).

### iii. *Daily Activities*

The ALJ further found that Plaintiff's daily activities were inconsistent with the claimed severity of her symptoms. (Doc. 12-13 at 27). Daily activities are a proper basis supporting an adverse credibility determination where they "are incompatible with the severity of symptoms alleged" or where "a claimant is able to spend a substantial part of [her] day engaging in pursuits involving the performance of physical functions that are transferable to a work setting." *Ghanim*, 763 F.3d at 1165 (citing *Orn*, 495 F.3d at 639; *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004)). The ALJ noted that during the relevant period Plaintiff had reported to Barrow Epilepsy that she was a busy stay-at-home mom and to Dr. Nolan that she did yoga or Pilates four days per week for about an hour per day. (Doc. 12-13 at 26–27; *and see* Doc. 12-8 at 69, 115). These reports are inconsistent with her testimony that her symptoms were so severe that she could only lift 10 pounds, stand for 20 minutes, and walk as far as the mailbox. This is therefore a clear and convincing reason supporting the ALJ's credibility determination.

Plaintiff argues that her daily activities were actually consistent with the severity of her alleged symptoms because at later hearings she testified that she had only engaged in 10 minutes of stretching on good days and that being a busy stay-at-home mom primarily meant lying incapacitated in bed while her teenagers got her younger children ready for school. (Doc. 20 at 25–26; *and see* Doc. 12-13 at 76–81). But this argument only underscores the ALJ's analysis by demonstrating that there are inconsistencies not only between Plaintiff's claimed symptoms and her reports to her medical treatment providers but also between those reports and her later testimony. *See Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017) (citing *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001))

(noting that equivocation regarding daily activities can justify rejecting fibromyalgia symptom testimony). The ALJ and not this Court is responsible for resolving such conflicts or ambiguities. *E.g.*, *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ's determination here was reasonable, and the Court defers to it.

The Court finds that the ALJ gave clear and convincing reasons supported by substantial evidence for not fully crediting Plaintiff's testimony regarding the severity of her symptoms.

**b.  Medical Opinion**

Plaintiff also argues that the ALJ erred in giving little weight to the opinion of Plaintiff's treating rheumatologist, Dr. Nolan. (Doc. 20 at 14–20). Because Plaintiff's claim was filed before March 27, 2017, pre-2017 SSA regulations apply to her claim. *See Farlow v. Kijakazi*, 53 F.4th 485, 488 & n.3 (9th Cir. 2022). Under these regulations medical opinions are divided into three categories: "those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r, Soc. Sec. Admin*, 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted). The ALJ may reject a treating physician's opinion by giving specific and legitimate reasons based on substantial evidence so long as that opinion is contradicted by another physician's opinion. *Id.* Specific and legitimate reasons include incongruity between a doctor's opinion and his medical records or between his opinion and a claimant's daily activities, as well as a doctor's reliance on a claimant's properly discredited reports regarding her own symptoms. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *see also Rollins*, 261 F.3d at 856. Further, an "ALJ need not accept the opinion of any physician if that opinion is brief, conclusory, and inadequately supported by clinical findings. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Dr. Nolan's opinion, which was a check-box form with no additional written explanation, found that Plaintiff met the criteria for fibromyalgia, suffered from "pain and/or fatigue" sufficiently severe to constantly interfere with attention or concentration, and experienced frequent severe headaches, incoordination, depression, anxiety, morning

stiffness, low back pain, vestibular dysfunction, cognitive impairment, and numbness and tingling in her extremities. (Doc. 12-8 at 78–80).

The ALJ gave specific and legitimate reasons for rejecting Dr. Nolan's opinion. (*See* Doc. 12-13 at 33–40). For example, the ALJ accurately noted that many of the symptoms Dr. Nolan checked—including incoordination, depression, vestibular dysfunction, cognitive impairment, and anxiety—were completely unsupported by his treatment notes. Similarly, the ALJ correctly noted that Dr. Nolan's treatment notes reflect that Plaintiff self-reported numbness and tingling only once. (*Id.* at 35; *see also* Doc. 12-8 at 118). The ALJ also noted that Dr. Nolan's opinion consisted of "pre-printed symptoms . . . which were checked as symptoms experienced by the claimant" and reasonably noted that aspects of the opinion were conclusory and lacked explanation. (*Id.* at 33–35). Because Dr. Nolan's opinion was conclusory and brief, to the extent it was inadequately supported by his treatment notes the ALJ was not obliged to accept it. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ( "[T]he ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions.") (cleaned up). The ALJ therefore gave specific and legitimate reasons for rejecting Dr. Nolan's opinion regarding these symptoms.

The ALJ also gave Dr. Nolan's opinion less weight because he had treated Plaintiff only three times on the date he provided his opinion. (Doc. 12-8 at 33). Plaintiff argues that this is not a proper reason supporting the ALJ's rejection of Dr. Nolan's opinion. But even the authority Plaintiff cites to support this proposition confirms that while the number of times a physician has treated a claimant may not by itself justify rejecting that physician's opinion, it is certainly a relevant and permissible consideration. *See Ghokassian v. Shalala*, 41 F.3d 1300, 1304 (9th Cir. 1994) (stating that an ALJ's error was "particularly glaring" where "he based most of his conclusions upon the report of a first-year resident who . . . only examined [the claimant] *once*." (emphasis in original)); *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (stating that a treating physician's opinion was not outweighed by the opinion "of an examining physician who examined [the claimant] only

once . . . ."); *Le v. Astrue*, 529 F.3d 1200, 1202 (9th Cir. 2008) (holding colorable an argument that five visits over three years is not enough to make a physician a treating source); *and see* 20 C.F.R. § 404.1527(c)(2)(i). The ALJ permissibly considered this factor.

The ALJ found Dr. Nolan's opinion that Plaintiff experienced frequent severe headaches unpersuasive because it was based on Plaintiff's self-reports which, as discussed, the ALJ properly discredited. Because Dr. Nolan's treatment records contain no relevant clinical findings and reflect that Plaintiff self-reported her migraines, this is a proper reason supported by substantial evidence for rejecting Dr. Nolan's opinion. *Ghanim*, 763 F.3d at 1162 (quoting *Tommasetti*, 533 F.2d at 1041) (stating that when a treating physician's opinion is based "to a large extent" on "an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion."); (*see* Doc. 12-8 at 115, 118).

The ALJ also rejected Dr. Nolan's opinion that Plaintiff's pain and fatigue were severe enough that she was unable to concentrate because she testified that she engaged in activities requiring concentration, such as driving a car. The ALJ additionally noted that Plaintiff's cognition was assessed as "relatively normal," and cited a Mini Mental Status Exam ("MMSE") on which she scored a five out of five on "[a]ttention/[c]alculation." (*Id.* at 33; *see also* Docs. 12-3 at 50; 12-7 at 18; 12-8 at 82, 86). Pain or fatigue which constantly interferes with concentration is inconsistent both with the constant concentration required to drive a car and with five-out-of-five attention.

Plaintiff argues that driving a car does not show inconsistency because "Dr. Nolan did not assess that Lacy could *never* do things that required some concentration," but was only "asked to assess Lacy's limitations with regard to sustaining activities at a job." (Doc. 20 at 16). This assertion is incorrect. Question 11 of the form Dr. Nolan filled out is not limited to job activities, but asks broadly: "How often is your patient's experience of pain and/or fatigue sufficiently severe to interfere with attention and concertation?" (Doc. 12-8 at 80). As discussed, Dr. Nolan checked "Constantly." (*Id.*). The very next question asks: to "what degree does your patient experience deficiencies of concentration, . . . resulting

in failure to complete tasks in a timely manner (in work settings *or elsewhere*)?" (*Id.*) (emphasis added). Dr. Nolan again checked "Constantly." (*Id.*).

Plaintiff also argues that her MMSE result does not "invalidate Dr. Nolan's assessment" because her ability to successfully complete an MMSE may not be transferable to a work setting, and therefore does not necessarily demonstrate that she can complete tasks in the context of regular employment. (Doc. 20 at 15–16). This argument misses the mark. Whether or not Plaintiff's MMSE result shows she can do sustained work, it certainly demonstrates an inconsistency between Dr. Nolan's opinion and other medical evidence in the record because it suggests that Plaintiff's pain and fatigue do not "constantly" interfere with her attention or concentration. Thus, Plaintiff's ability to drive a car and her MMSE result are inconsistent with Dr. Nolan's opinion and support the ALJ's decision to discount that opinion.

Rather than relying on Dr. Nolan's opinion, the ALJ placed great weight on the opinions of Dr. Sapin (a state agency medical consultant) and two state agency psychological consultants, while giving little weight to the opinion of a second medical consultant, Dr. Woodcock, to the degree the ALJ found their opinions consistent with the medical evidence in the record. (*See* Doc. 12-13 at 37). Plaintiff argues that the ALJ failed to give sufficient reasons for giving Dr. Nolan's opinion less weight than he gave to some of the consultants' opinions. (Doc. 19 at 19). But, as discussed, the ALJ gave specific and legitimate reasons for rejecting Dr. Nolan's opinion. Further, while "the opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of . . . a treating physician," even "brief, conclusory opinions of [a] state agency reviewing physician" can "establish a conflict among the medical opinions." *Widmark v. Barnhart*, 454 F.3d 1063, 1065 & n.2 (9th Cir. 2006). The ALJ's resolution of this conflict was reasonable. The Court defers to the ALJ, and finds that she did not err in giving little weight to Dr. Nolan's opinion.

## IV. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that the Commissioner's decision is affirmed, and the Clerk of the Court shall enter judgment accordingly.[3]

Dated this 24th day of March, 2023.

James A. Teilborg
Senior United States District Judge

---

[3] To the extent a mandate is required, the judgment shall serve as the mandate.